608

## ALTVATER v. KNIGHT.

### Patent Appeal No. 3559.

Court of Customs and Patent Appeals.
Feb. 17, 1936.

See, also (Cust.& Pat.App.) 82 F.(2d) 611.

John D. Rippey and Lawrence C. Kingsland, both of St. Louis, Mo. (John H. Cassidy, of St. Louis, Mo., of counsel), for appellant.

C. Russell Riordon and Charles E. Riordon, both of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding which arose between patent No. 1,885,169, issued to the party Altvater November 1, 1932, on an application filed May 22, 1931, and an application of the party Knight, filed December 21, 1932, for the reissue of patent No. 1,886,554, granted him November 8, 1932, on an application filed January 14, 1924.

The subject-matter is a perforating device intended particularly for use in making ornamental perforations in materials, such as leather, entering into the manufacture of shoes, especially shoe uppers.

Only one count is involved in the appeal. It reads: "A machine of the character described comprising rigid ornamenting dies, a movable support having holes therethrough for the projection of said dies when said support is moved, a gage device supported by said support for gaging and locating the work properly with respect to said dies, and means for operating said gage device to position against the upper side of the work that is mounted on said support."

It was copied by Knight from the Altvater patent for interference purposes.

The single issue presented is whether the party Knight, who is the senior party, in his application which matured into patent No. 1,886,554, disclosed the invention of the count.

The Board of Appeals, it may be said, had the question of Knight's disclosure before it in three separate hearings. Originally, the interference contained four counts. Altvater moved to dissolve on the ground that Knight had no right to make the counts because of lack of disclosure. The motion was sustained by the Examiner of Interferences, but upon appeal the board reversed as to the count now involved, which was count 1, and upon return of the case to the Examiner of Interferences he entered judgment on the record awarding priority to Knight upon said count. Altvater then applied to the board for a rehearing as to count 1, citing certain cases which it was argued were controlling. The board denied the petition, whereupon appellant took formal appeal from the decision of the Examiner of Interferences entering judgment on the record. The board, adhering to its former views, affirmed the decision, and the instant appeal to this court followed.

In general, it may be said that each party discloses a device comprising a se-

ries of plates fastened together, one upon top of another, so that they form a rigid base which rigidly supports what are called die elements. These die elements are small pins or "pegs" whose outer ends are sharpened and given a contour which adapts them for use in punching small holes in material. Another plate, sometimes referred to as a "work support" and at other times as a "stripper plate," is located above the base, being attached to it and held apart from it, by springs capable of being compressed when it is desired to bring the die elements in contact with the material. These stripper plates are equipped with holes which are in alinement with the rigid die elements.

As to the foregoing general features there is no issue between the parties. The issue grows largely out of an additional plate which is located above the stripper plate.

Altvater refers to this additional plate as a "gage device," or "gage plate." Knight refers to his as a "gage mask," or "hold-down plate." For convenience, we shall use the term "gage plate" in referring to this feature of both devices.

In the Altvater device the gage plate is a strip of metal whose upper edge is comparatively straight, but whose lower edge is fashioned to conform to the arrangement of the holes in the stripper plate, said lower edge being serrated with the edges of the serrations alining with parts of the edges of some of the holes.

The Knight device shows substantially the same arrangement of a serrated edge alined with parts of some of the hole edges.

There are structural differences in the respective gage plates, and certain differences in operation, but none in the ultimate function performed.

Altvater's gage plate stands above and normally out of contact with the stripper plate. Its normal position, when not in operation, leaves a sufficient space between its lower side and the upper side of the stripper plate to admit of the entrance of the material which it is desired to perforate with the die elements. The gage plate is equipped with a rivet at each end, and these rivets extend through holes in the stripper plate and are rigidly riveted into the ends of arms of what Altvater designates as an "angular bail-shaped lever." The arms of this lever extend forwardly from the points where they are riveted to the gage plate and are connected at their front ends by a metal connection which is slightly back of the front edge of the stripper plate and extends across it, the entire lever element being underneath the stripper plate. When it is desired to operate the device, the material is inserted by hand in the space between the stripper plate and gage plate. It covers the holes in the stripper plate through which the die elements are to be pressed, but by means of the serrated edges of the gage plate, above described, the operator is enabled to place the material in proper position relative to the concealed holes. The operator then presses the arm connecting strip of the bail-shaped lever upward, and this causes the gage plate to be drawn downwardly to contact the material resting upon the stripper plate. While it is so held pressure is applied by means not here involved, which causes the dies to thrust upwardly through the holes in the stripper plate and puncture the material.

Knight's gage plate consists of a metallic plate which covers the entire surface of the stripper plate, except for a cut-out section over the holes, and extends beyond both side edges and bottom edge of the latter. The projections at the lower ends of its (the gage plate's) sides are wider than those at its upper ends and are bent downwardly, forming what Knight designates as "wings." The gage plate at its upper end is hingedly attached to the stripper plate, and, in normal position, when not in operation, the under surface of the gage plate rests directly upon the upper surface of the stripper plate. In operation, the operator, using the wings as handles, lifts the gage plate by hand and places the work on the stripper plate, covering the holes, as in the Altvater device. When the gage plate is lowered to contact with the material, the serrated edge of the upper side of the cut-out section in the gage plate indicates the proper alinement to be made with the holes in the stripper plate through which the die elements are pressed by means not here at issue.

The count which is here involved is concededly broad in its terms, but it is insisted on behalf of the party Altvater that at least two of its features are not disclosed in the Knight patent, viz., (1) "a gage device supported by said support for gaging and locating the work * * *,"

emphasis being placed upon "and locating," and (2) "means for operating said gage device to position against the upper side of the work."

The contention on behalf of appellant is, in substance, that since the count originated in the patent to Altvater, it must be interpreted in the light of that patent, and if there be any ambiguity in the count, the meaning given it must be that disclosed in Altvater's specification. This rule of law is a familiar one. Also familiar is the rule that in the absence of ambiguity counts are to be given the broadest interpretation of which their language will reasonably admit.

We have examined the count in issue in the light of these established rules.

As has been said, in both devices the work is actually placed in position, for puncturing, by the hand of an operator. There is no mechanical feature which moves the work upon the surface of the stripping plate. That is done wholly by the hands of skilled operators. Also, it is clear that "the work," as used in the count, means the material which is to be punctured. When, therefore, the count speaks of a device "for gaging and locating the work properly with respect to said dies," it means simply that a device is provided by means of which the operator is enabled to place the material in a position where, when pressure is applied, the die elements will puncture it at the particular points desired.

This, it seems to us, is obviously provided by substantially similar means, that is the serrated edges in the gage devices alined with the edges of the covered holes, in both mechanisms.

There is argument on behalf of appellant to the effect that his gage plate does mechanically locate the work, "as distinguished from merely performing the office of a sight gage"; but we are not convinced of the correctness of this position.

The devices of both parties apparently are adapted to be used in perforating not only single pieces of material but also materials which are laminated, and in a part of Altvater's specification, which evidently refers to laminated materials, reference is made to an edge of one of the layers forming an abutment edge, or surface, for engagement against the edge of his gage plate, and it is insisted that, by reason of this, his gage plate does mechanically locate the work, so that the proper portion of another of the layers is brought into correct position for the puncturing operation.

It does not seem to us that the gage performs any mechanical function in this operation. Apparently what happens is that when the operator places the laminated material in a position where an edge of one layer of the work abuts the edge of the gage, the other layer of necessity is located properly for puncturing; the laminated article having been performed in the correct proportions.

However, there is no necessity for a refinement of reasoning respecting the functions performed respectively by the edge of a layer of material and the edge of the gage, because it seems obvious that the function of locating the work performed on, or by, one device is performed in substantially the same manner on, or by, the other device.

The second limitation emphasized on behalf of appellant is that of "means for operating said gage device to position against the upper side of the work that is mounted on said support."

Here again, let it be remembered, "the work" means the material which is to be punctured, and its upper side is that side which contacts with the under surface of the gage plate, and we understand the phrase "that is mounted on said support" to refer to the material which rests upon the stripper plate.

The "means" provided by Altvater for accomplishing this end consists of the "bail-shaped lever," the "handle" of which the operator presses upward in order to draw the gage plate in contact with the upper side of the material inserted between stripper plate and gage plate.

The "means" which Knight claims for this purpose consists of the "wings" which are a part of, and made integral with, his gage plate. The operator after having lifted the hinged gage plate by hand, using the wings as handles, and after having inserted the material, lowers the gage plate by hand, still using the wings as handles, and the under surface of the gage plate is brought into position against the upper side of the work.

We see no sound reason why these wings, although integral with the gage plate as a whole, may not properly be considered as "means" in the sense of the

count. In his specification Knight defines their function, saying that the operator may rest his fingers on the wing portion "to hold it against the work, with only one hand, if desired * * *" and one of the claims of his patent evidently refers to the wings when it speaks of "means adapted to be grasped by the operator to press the gauge plate against the work."

It seems to us that the two limitations upon which appellant relies are themselves of such a breadth that the disclosures of Knight read fairly upon them. It is a familiar rule that courts may not, in an interference proceeding, read limitations into a count which are not clearly expressed therein. To sustain appellant's position here it seems to us limitations not expressed would have to be read into the limitations upon which reliance is placed.

The authorities relied upon by appellant have been examined and considered but are not regarded as applicable here.

The decision of the Board of Appeals is affirmed.

Affirmed.

23 C.C.P.A. (Patents)

